UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARK STUMPH                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:11-CV-650

NATIONAL ASBESTOS WORKERS
PENSION PLAN, *et al.*                                                          DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Mark Stumph brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") to recover pension benefits he believes he was improperly denied. Currently pending before the court are cross-motions by Stumph (DN 20) and the defendants (DN 21) for summary judgment.[1]

The parties do not dispute the following relevant facts. Stumph was a member of the International Association of Heat and Frost Insulators and Allied Workers, Local #51 ("Local 51"). Defendant National Asbestos Workers Pension Fund (the "Fund") is a multiemployer pension plan, as defined by ERISA. The Fund provides pension benefits to the members of, among other local unions, Local 51. Defendant The Board of Trustees of the National Asbestos Workers Pension Plan ("Board of Trustees") sets pension benefit levels and elects an Executive Committee that oversees basic governance of the Fund, including resolving appeals. Defendant Carday Associates, Inc. ("Carday") a third-party administrator for the Fund; among other things, it receives and credits

---

[1] Stumph filed a document he denotes a "Plaintiff's Brief" rather than a motion for summary judgment. However, the court will treat the motion as one for summary judgment because Stumph requests that this court grant a judgment in his favor based on the evidence in the case.

contributions to the Fund from employers, processes pension applications, provides statements to participants, and processes appeals.

Until 2010, the Fund had a retirement benefit named the "Unreduced Early Retirement" benefit, under which a Fund participant could receive a full pension after 30 years of service; for that reason, it was more commonly known as the "30-and-out" pension benefit. However, by 2010, the Fund was in dire straights financially, due in part to the collapse of the stock market in 2008. On September 30, 2010, the Board of Trustees held a special emergency meeting to discuss the Fund's financial health. At that meeting, the Board of Trustees adopted a Plan of Rehabilitation that, the Board hoped, would enable the Fund to continue to meet all of its obligations to Fund participants.

Relevant here, the Plan of Rehabilitation eliminated the 30-and-out pension benefit for all employees who would not be eligible for the benefit as of December 31, 2010. The Plan of Rehabilitation replaced the 30-and-out benefit with a different benefit, known as the "Rule of 90" benefit. Under the Rule of 90 benefit, a participant had to meet three requirements in order to receive a full pension: (1) reach age 55; (2) have at least 30 years of service; and (3) have a combination of age and years of service that adds up to 90.

Notice was provided to the Fund participants regarding the relevant changes to the Fund's benefits. Several participants then filed appeals claiming that they had not received all of the credit to which they were entitled for certain years and that, with such credit, they would have accrued the necessary 30 years of service by December 31, 2010, such that they would be eligible for the 30-and-out benefit before it was eliminated. Stumph was one such participant. According to the Fund's records, Stumph would have 29.75 credits on December 31, 2010, leaving him just .25 credits shy of qualifying for the 30-and-out pension benefit. In Stumph's appeal, which was filed by Danny

Kehl, the Business Manager of Local 51, on November 22, 2010, Stumph argued that there were hours he worked in 1981 and 1982 that should have been, but were not, credited by the Fund, which would raise him above the 30-credit threshold.

Stumph's appeal was initially heard by the Executive Committee on February 3, 2011, but was tabled to allow Kehl and Stumph to obtain evidence concerning Stumph's argument. Thereafter, Stumph contacted Kenny Hamilton, the owner of Dixie Insulation Company, Inc. ("Dixie"), which was the company for which Stumph worked in July 1981 through February 1982. Hamilton wrote a letter on Stumph's behalf stating that Stumph had worked 967 hours for Dixie during the relevant time period; the Fund's records indicated that Stumph had only worked 788 hours for Dixie during that period. Hamilton's letter did not explicitly state how he came to the conclusion that Stumph had worked 179 more hours than he received credit for from the Fund.

After receiving Hamilton's letter, Carday contacted Hamilton because Dixie had only made contributions to the Fund for 788 hours worked by Stumph during the relevant time period, rather than for the 967 hours that Hamilton now claimed Stumph had actually worked. Carday requested that Dixie pay an additional $313.25 dollars in contributions. Hamilton wrote a personal check to Carday for that amount (Dixie was no longer in business).

In May of 2011, the Executive Committee once again took up Stumph's appeal, and once again tabled the appeal in order to obtain further evidence of the work Stumph had performed for Dixie. Thereafter, Carday sent a letter to Stumph explaining that the Fund's Board of Trustees "operate under the presumption that the Fund Office records are correct." The letter from Carday continued that, in Stumph's case, the presumption was supported by two additional facts: first, none of Stumph's employers were reported as delinquent in contributions to the Fund, and second,

- 3 -

Stumph never questioned the amount of hours worked or service credits that were reported on his annual statements. The letter stated that Stumph could rebut the presumption of correctness with documentation that "persuasively demonstrate[d]" that he performed work for which contributions should have been paid.

Thereafter, Hamilton wrote a letter elucidating his reasons for believing that Stumph had worked 967 hours, rather than 788 hours, during the relevant time period. Hamilton noted in the letter that Dixie had closed in the 1980s and that there were no remaining records of the business operations; he further stated that he had not been involved in doing the business's payroll. However, Hamilton recalled that Stumph worked as an insulator's Helper and that new unskilled Helpers were paid $8.75 per hour. Apparently, using Social Security documents showing that Dixie paid Stumph $7,844 in 1981 and $622 in 1982, Hamilton divided $8466 (the total amount Dixie paid to Stumph during 1981 and 1982) by Stumph's pay rate of $8.75 per hour to reach the conclusion that Stumph had worked 967 hours during those years.

The Executive Committee considered Stumph's appeal for a third time on August 4, 2011, and it unanimously concluded that Stumph's appeal should be denied. According to the declaration of John Carroll, the Chairman of the Executive Committee and the Trustees of the Fund, the Executive Committee evaluated the evidence presented by Stumph, including Hamilton's payment of contributions to the Fund for the supposedly unreported hours and the Social Security earnings report that served as the basis for Hamilton's conclusion as to the number of hours Stumph worked. However, the Executive Committee found that Stumph's evidence was not persuasive enough to overcome the presumption that the Fund's records were correct, especially since the presumption was supported by the failure of Stumph and Local 51 to complain about Dixie's contributions at an

- 4 -

earlier time and the fact that Stumph never raised an issue over nearly thirty years with the number of credits recorded by the Fund despite that he received an annual statement showing his hours of work. According to Carroll's affidavit, the Executive Committee also took into account that the work in question had allegedly been performed nearly thirty years earlier, making eyewitness accounts of the work difficult to find or credit; that the actuary had relied on the Fund's records in determining the financial health of the Fund; and that other participants were also challenging the Fund records in order to try and qualify for the thirty-and-out pension benefit by the deadline, which meant that ignoring the Fund's records as to Stumph could have reverberations into the benefits owed to those other participants. Thus, Carroll's affidavit states, the Executive Committee unanimously "felt that disregarding the existing [Fund] records would not be consistent with the [Executive Committee's] fiduciary duties nor in the best interest of the participants and beneficiaries of the Fund." The Fund's attorney sent a letter dated August 16, 2011 to Stumph's attorney stating that the Executive Committee had denied Stumph's appeal. Stumph then filed this action against the Fund, the Trustees of the Fund, and Carday. As noted above, Stumph and the defendants have now cross-moved for summary judgment.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities*

*Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court established the framework for judicial review of benefits determinations by fiduciaries or plan administrators under ERISA. The Supreme Court held that a denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. However, if the benefit plan grants the fiduciary or administrator such discretionary authority, then an abuse of discretion standard applies. *Id.* at 111. There is no dispute between the parties that the Fund's plan grants the Board of Trustees broad discretion, including to construe the terms of the plan and to determine eligibility for benefits. Thus, the abuse of discretion standard of review applies.

Under an abuse of discretion standard, a trustee's interpretation is not disturbed so long as the interpretation is reasonable. *Firestone*, 489 U.S. at 111. Put another way, a trustee's decision "should be upheld if it is 'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.'" *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009) (quoting *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd sub nom. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

Here, the court finds, based on the undisputed evidence, that the Executive Committee abused its discretion in determining Stumph's appeal. Carroll, the Chairman of the Executive Committee and the Board of Trustees, stated the following in his affidavit with regards to the reasons for  concerning the Executive Committee's decision to deny Stumph's appeal:

- 6 -

> In making this determination, the Executive Committee took into account . . . that several other participants, in addition to the Plaintiff, were now attempting to take issue with these same records in order to qualify for the Thirty-and-out Pension before the December 31, 2010 deadline, meaning that by ignoring the Fund's own records and granting this appeal, would [sic] potentially create several additional claims for benefits against the Fund.

In other words, one of the factors that the Executive Committee considered in determining whether Stumph had worked certain hours in 1981 and 1982 was the financial health of the Fund, since a finding in Stumph's favor would potentially set a precedent for similar appeals, of which there were several. The court finds that reliance on that factor was erroneous.

The Supreme Court's decision in *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, informs the court's holding. In *Glenn*, MetLife was both the plan administrator and the insurer of Sears' long-term disability insurance plan. The plan provided that MetLife, as administrator, had discretionary authority to determine the validity of an employee's claim for benefits, while also providing that Met Life, as insurer, would pay valid benefit claims. The Supreme Court first determined that MetLife's role as plan administrator and payor of benefits created a conflict of interest. *Glenn*, 554 U.S. at 112. The Court then addressed how such a conflict of interest should impact judicial review of a discretionary benefit determination. It stated that "when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id.* at 117. The Supreme Court noted that a conflict of interest would be "more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision," while it would be "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances." *Id.*

- 7 -

*Glenn*'s explanation that a court should take into account the likelihood that a claims administrator's role as payor of benefits affected the administrator's determination of whether an individual is entitled to benefits supports the finding that it is improper to take into account such factors as the overall financial health of the fund when deciding whether a participant meets the requirements for a particular benefit. As noted above, Carroll, the Executive Committee Chairman, admits that the Executive Committee considered just such a factor when determining Stumph's eligibility.

It is true that the Executive Committee also took into account certain legitimate considerations in denying Stumph's appeal. Those considerations included that the Fund's records showed that Stumph had not worked the hours in question and that nearly thirty years had passed since the alleged work had been performed. However, because Carroll's affidavit makes clear that a concern about an improper issue – the potential that granting Carroll's appeal could lead to large liability for the Fund due to the fact that many similar appeals had been filed concerning supposedly missing credit for time worked – played a role in the Executive Committee's decision-making process with regard to Stumph's appeal, the court finds that the Executive Committee abused its discretion.

Where a court finds that a plan administrator abused its discretion, the court may either award benefits to the claimant or remand to the plan administrator for a renewed evaluation of the claimant's case. *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006)). The Sixth Circuit has explained that, "where the 'problem is with the integrity of [the plan's] decision-making

process,' rather than 'that [a claimant] was denied benefits to which he was clearly entitled,' the appropriate remedy generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622.

Here, the court cannot determine that Stumph is clearly entitled to the 30-and-out pension benefits. As noted above, the plan administrators had some legitimate considerations that counseled against finding that Stumph was eligible for that pension benefit. A remand would allow for the Executive Committee to make a full and fair assessment, without reliance on any improper factors, as to whether Stumph has demonstrated his eligibility for the 30-and-out pension benefit.

In sum, the defendants' motion for summary judgment will be denied and Stumph's motion for summary judgment will be granted to the extent of remanding this matter to the Executive Committee for a full and fair assessment of Stumph's eligibility for the Unreduced Early Retirement benefit. A separate order will issue in accordance with this opinion.

May 2, 2013

**Charles R. Simpson III, Senior Judge
United States District Court**